UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
JOHN DOE,

                    Plaintiff,

  -against-

HOFSTRA UNIVERSITY,

                  Defendant.
-----------------------------------------------------------X

**MEMORANDUM AND OPINION**
24-CV-6146(SIL)

**STEVEN I. LOCKE, United States Magistrate Judge:**

Presently before the Court in this action arising under Title IX of the Education Amendments of 1982 ("Title IX"), 20 U.S.C. § 1681 *et seq.*, and the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 296 *et seq.*, is Defendant Hofstra University's ("Defendant," "Hofstra," or the "University") motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."). *See* Docket Entry ("DE") [26]. Plaintiff John Doe ("Plaintiff" or "Doe") opposes the motion. DE [26-2]. For the reasons set forth herein, Defendant's motion for judgment on the pleadings is granted in its entirety and this action is dismissed.

**I.    BACKGROUND**

    **A.    Factual Background**[1]

        1.    The Parties and Jane Roe

Hofstra is a "partially federally funded, non-profit, nonsectarian university in Hempstead, New York." *See* Complaint ("Compl."), DE [1], ¶ 8. Doe is a resident of

---

[1] The facts are drawn from Plaintiff's Complaint and are accepted as true for purposes of Defendant's motion. *See Gray v. Gomez*, 728 F. Supp. 3d 264, 266 n.1 (E.D.N.Y. 2024) ("For purposes of deciding a motion for judgment on the pleadings, the Court accepts as true all factual allegations in the complaint and construes them in the light most favorable to the non-moving party.") (citing *Latner v. Mt. Sinai Health Sys., Inc.*, 879 F.3d 52, 54 (2d Cir. 2018)).

1

Nevada who enrolled at Hofstra as a transfer student in the Spring of 2022. *Id.* at ¶ 7. Both he and non-party Jane Roe ("Roe") were students in Hofstra's Bachelor of Fine Arts program (the "B.F.A. Program"). *Id.* at ¶¶ 18-22, 36. Plaintiff alleges that the B.F.A. Program is "highly regarded" and "only admits 16 students per year." *Id.* at ¶¶ 4, 19, 60.

    2. <u>Doe's Relationship with Roe</u>

Plaintiff met Roe in class during the Spring of 2022. *Id.* at ¶ 22. From October 2022 through November 2022, they had an "on again/off again relationship" in which they engaged in consensual sexual relations. *Id.* at ¶ 24. On November 13, 2022, while having intercourse, Roe said "something that was unintelligible to Plaintiff" and moments later said 'I think I'm done.'" *Id.* at ¶ 25. Doe alleges that he "immediately stopped having intercourse with her" and that Roe left his room.[2] *Id.* at ¶¶ 25-26. The following week, Plaintiff asked Roe to have sex. *Id.* at ¶ 28. Roe declined and told Doe that she believed what had happened the prior week was sexual assault. *Id.* On or about November 18, 2022, Roe "broke up with Plaintiff via text message." *Id.* at ¶¶ 31, 32. Nevertheless, they remained "amicable and would speak to each other during the classes they had together." *Id.* at ¶ 33.

Doe alleges that, on or about December 12, 2022, Roe "told a number of Hofstra students that Plaintiff had raped Roe." *Id.* at ¶ 40. Although Doe only identifies two individuals who Roe allegedly informed by their initials – H.W. and S.M. – he asserts

---

[2] Although Plaintiff alleges that Roe prefers "they/them" pronouns, *see* Compl. ¶ 38 n.3, he refers to Roe with "she/her" pronouns. *See, e.g.*, *id.* at ¶¶ 25, 52. The Court will do the same.

that Roe told whoever she informed that "they could 'tell everyone.'" *Id.* at ¶¶ 34, 35, 40, 45. Plaintiff claims that this "created an extremely hostile environment for [him]" because "[t]he BFA program is very small and operates as a cohort." *Id.* at ¶¶ 59, 60. He alleges that he was "ostracized and treated like a leper" because students in the program "often work collaboratively, acting out scenes with a partner and providing feedback on each other's work." *Id.* at ¶¶ 35, 62, 64. Doe claims that this treatment from other B.F.A. Program students included asking to not be paired with him for scene work, not providing him with feedback on his performances, glaring and scoffing at him, not speaking to him, and not providing him with "loud cheering" at the end of a performance in which he was cast. *Id.* at ¶¶ 65-69, 84. Plaintiff alleges that this "had a direct and significant effect on [his] acting work," and that his "mental health significantly declined, resulting in increased anxiety, depression and frequent panic attacks." *Id.* at ¶¶ 61, 70-71.

3. <u>Hofstra Investigates Doe's and Roe's Title IX Complaints</u>

On December 15, 2022, Roe reported that Plaintiff sexually assaulted her to Hofstra's Office of Public Safety. *Id.* at ¶ 55. At that time, Roe did not want to open an investigation and only requested that a No-Contact Order be issued. *Id.* Hofstra sent Doe a No-Contact Order on December 16, 2022. *Id.* at ¶ 57. On February 6, 2022, following the alleged ostracization by his classmates described above, Plaintiff filed a Title IX complaint against Roe ("Doe's Title IX Complaint"). *Id.* at ¶ 72. Hofstra assigned Doe's Title IX Complaint to an investigator and, on February 8, 2023, sent Roe a Notice of Allegations. *Id.* at ¶¶ 73-74. Plaintiff claims that Hofstra

3

"had been trying to schedule an interview with Roe from February 8, 2023." *Id.* at ¶ 75. On February 22, 2023, Roe changed course and informed Hofstra that she ***did*** wish to proceed with an investigation of her December 15, 2022 complaint against Plaintiff. *Id.* at ¶ 76.

On March 1, 2023, Roe met with the assigned investigator to discuss Doe's Title IX Complaint. *Id.* at ¶ 87. Roe told the investigator that, in mid-December 2022, she informed Plaintiff that she would pursue an investigation of her complaint if he remined enrolled at Hofstra. *Id.* at ¶¶ 88, 92. The investigator interviewed both H.W. and S.M., both of whom told the investigator that Plaintiff had raped Roe. *Id.* at ¶¶ 99, 100, 103, 105. The investigator also interviewed four professors between early March 2023 and the end of April 2023. *Id.* at ¶¶ 107, 113, 120, 130. Two of the professors stated they had been made aware of the alleged assault and one stated that he "immediately reported" it to Hofstra's Title IX Office. *Id.* at ¶¶ 108, 109, 114.[3]

While the investigation was pending, Plaintiff made an additional allegation that a professor "sanctioned" retaliatory and harassing conduct by allowing Roe to perform a scene that "involved a nun accusing a priest of sexually assaulting a young boy and demanding that the priest confess and resign." *Id.* at ¶ 134. Doe claims that "Roe intentionally chose the scene to mirror Roe's harassment of Plaintiff." *Id.* at ¶ 135. On April 27, 2023, Plaintiff emailed the Investigator requesting to add a charge of retaliation against Roe and to file a formal Title IX Complaint against the professor

---

[3] Plaintiff also alleges that the investigator interviewed his mother. *Id.* at ¶ 126. The content of Plaintiff's mother's alleged testimony is irrelevant here.

who "sanctioned" the scene. *Id.* at ¶ 139. In response, on May 2, 2023, Plaintiff scheduled a meeting to meet with Hofstra's Senior Vice Provost for Academic Affairs for the following day. *Id.* at ¶¶ 140-41. Doe stated that he wanted "his advisor present for that meeting." *Id.* at ¶ 141. Minutes before the meeting, Hofstra informed Plaintiff that because his chosen advisor "was not a 'Hofstra Advisor' . . . he would not be able to attend the meeting . . . ." *Id.* at ¶ 142. Hofstra never rescheduled the meeting. *Id.* at ¶ 144.

    4. <u>Plaintiff's Voluntary Withdrawal From the B.F.A. Program</u>

Plaintiff alleges that, because of previous struggles with anxiety, the "prospect of returning to Hofstra and the hostile environment he had endured throughout the Spring Semester was too overwhelming" for him. *Id.* at ¶¶ 150-51. Accordingly, he alleges that he was "compelled to withdraw from two of his BFA drama courses," which "put him behind and not on track to graduate on time." *Id.* at ¶¶ 77, 79. Doe subsequently voluntarily withdrew from Hofstra entirely in August 2023. *Id.* at ¶ 153. He does not allege that Hofstra required that he withdraw from his classes or the University or that Hofstra took any disciplinary action against him.

He does assert, however, that after he voluntarily withdrew from Hofstra, on or about September 19, 2023, Hofstra's Associate General Counsel offered him "an 'Informal Resolution'" that he considered "patently insufficient." *Id.* at ¶ 154. He was no longer a student at this time. Doe rejected the informal resolution. *Id.* at ¶ 157. On October 12, 2023, Hofstra informed Plaintiff that Roe had withdrawn her

5

complaint against Plaintiff and that the University was therefore dismissing Plaintiff's complaint against Roe. *Id.* at ¶ 158.

5. <u>Relevant Policies</u>

When Plaintiff enrolled at Hofstra, he received a copy of Hofstra's Student Handbook for the 2022-23 school year (the "Handbook"). *Id.* at ¶ 173. Doe does not allege whether he was required to sign or otherwise formally agree to the Handbook. The Handbook provides that "[o]nly incidents falling within the Final Rule's definition of Covered Sexual Harassment, defined below, will be investigated and, if appropriate, brought to a live hearing through [the] Title IX Grievance Policy." *Id.* The Handbook contains policies on student conduct, including a "Policy Prohibiting Discriminatory Harassment, Relationship Violence and Sexual Misconduct" (the "Misconduct Policy"). *Id.* at ¶ 177. The Misconduct Policy prohibits "[u]nwelcome conduct that a reasonable person would determine is so severe, pervasive, and objectively offensive that it effectively denies a person equal access to the University's education program or activity." *Id.* Doe alleges that Hofstra "violated the [Student Handbook] when it prevented Plaintiff's advisor from being present at Plaintiff's meeting." *Id.* at ¶ 179. He further alleges that Hofstra "violated the [Student Handbook] when it unilaterally dismissed [his] Complaint without any basis." *Id.* at ¶ 182. Relevant here, the University may exercise its discretion in dismissing a complaint where "[s]pecific circumstances prevent the University from gathering evidence sufficient to reach a determination regarding the Formal Complaint or allegations within the Formal Complaint." *Id.* at ¶ 168.

6

B. **Procedural Background**

By way of a Complaint dated September 3, 2024, Plaintiff commenced this action against Hofstra and the Board of Trustees of Hofstra University (the "Board").[4] DE [1]. Doe asserts causes of action against Hofstra for: (1) violation of Title IX for deliberate indifference; (2) violation of Title IX for hostile environment; (3) violation of NYSHRL § 296(4); and (4) breach of contract and the covenant of good faith and fair dealing. Compl. ¶¶ 198-269. On February 4, 2025, Hofstra filed the instant fully briefed motion for judgment on the pleadings, DE [26], which Plaintiff opposes. DE [26-2].

## II. LEGAL STANDARD

Pursuant to Fed. R. Civ. P. 12(c), "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." The standard for addressing a Rule 12(c) motion mirrors that for a Rule 12(b)(6) motion to dismiss for failure to state a claim. *Hogan v. Fischer*, 738 F.3d 509, 514-15 (2d Cir. 2013) (citation omitted). Accordingly, "[t]o survive a motion for judgment on the pleadings, a pleading 'must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Pizza on 23rd Corp. v. Liberty Mut. Ins. Co.*, 723 F. Supp. 3d 307, 311 (S.D.N.Y. 2024) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009)); *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1973 (2007). A motion for judgment on the pleadings may

---

[4] Plaintiff voluntarily dismissed his claims against the Board, leaving Hofstra as the sole Defendant. DE [20].

7

be granted "only where, on the facts admitted by the non-moving party, the moving party is clearly entitled to judgment." *Transamerica Fin. Life Ins. Co. v. Session*, No. 10 Civ. 1328(HB), 2010 WL 4273294, at *2 (S.D.N.Y. Oct. 28, 2010) (citing *Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 642 (2d Cir. 1988)). "[J]udgment on the pleadings is not appropriate if there are issues of fact which if proved would defeat recovery, even if the trial court is convinced that the party opposing the motion is unlikely to prevail at trial." *Lively v. WAFRA Invest. Advisory Grp., Inc.*, 6 F.4th 293, 301 (2d Cir. 2021) (internal quotation omitted). Accordingly, "where a 'question [of fact] is in dispute, it [is] improper for the district court to answer it on a motion for dismissal on the pleadings.'" *Lively*, 6 F.4th at 302 (quoting *Sheppard v. Beerman*, 18 F.3d 147, 151 (2d Cir. 1994)).

## III. DISCUSSION

### A. Title IX Claims

Title IX provides that "'[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance.'" *See Roe v. St. John's Univ.*, 91 F.4th 643, 652 (2d Cir. 2024) (quoting 20 U.S.C. § 1681(a)). A private action against an educational institution is only viable under Title IX "where the funding recipient [in this case, the University] engages in intentional conduct that violates the clear terms of the statute." *Doe v. Yeshiva Univ.*, 703 F. Supp. 3d 473, 490 (S.D.N.Y. 2023) (quoting *Davis ex rel. LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 642, 119 S. Ct. 1661, 1662 (1999)). Plaintiff

8

asserts Title IX violations for harassment and deliberate indifference. Compl. ¶¶ 198-239. His allegations are deficient under either theory of liability.

"Title IX permits a plaintiff to recover damages when he or she is subjected to a hostile environment that constitutes discrimination on the basis of sex and deprives the plaintiff of the ability to enjoy the benefits of an educational program receiving federal funds." *St. John's Univ.*, 91 F.4th at 661. To establish a Title IX hostile environment claim, a plaintiff must allege "that '(1) a federally funded educational institution (2) was deliberately indifferent to and (3) had actual knowledge of (4) sexual harassment that was so severe, pervasive, and objectively offensive that it could be said to have deprived the plaintiff of access to the educational opportunities or benefits.'" *A.S. v. City Sch. Dist. of Albany*, No. 21-CV-620(BKS)(ATB), 2022 WL 356697, at *19 (N.D.N.Y. Feb. 7, 2022) (quoting *Roskin-Frazee v. Columbia Univ.*, No. 17 Civ. 2032(GBD), 2018 WL 6523721, at *4 (S.D.N.Y. Nov. 26, 2018); *A.A. by B.B. v. Hammondsport Cent. Sch. Dist.*, 527 F. Supp. 3d 501, 510-11 (W.D.N.Y. 2021) (describing the elements for student-on-student harassment claims under Title IX as including "(1) school authorities had actual knowledge of the harassment or the risk thereof; (2) they were deliberately indifferent to it; and (3) the harassment was so 'severe, pervasive, and objectively offensive' that it deprived the student of access to the educational opportunities and benefits provided by the school") (quoting *Carabello v. New York City Dept. of Educ.*, 928 F. Supp. 2d 627, 638 (E.D.N.Y. 2013)).

A university violates Title IX under a deliberate indifference theory of liability when it has "actual knowledge of a heightened risk that is specific enough to allow it

9

to remedy such a policy." *Marciniak-Domingues v. Mass. Inst. of Tech.*, No. 22-CV-10959(ALC)(SN), 2024 WL 4350826, at *8 (S.D.N.Y. Sept. 30, 2024) (quoting *Tubbs v. Stony Brook Univ.*, 343 F. Supp. 3d 292, 319 (S.D.N.Y. 2018). "A finding of deliberate indifference depends on the adequacy of a [school's] response to the harassment," under which standard a "failure to respond, a response that 'only follows after a lengthy and unjustified delay,' and a response that 'amount[s] to deliberate indifference to discrimination' have all been found inadequate." *Yeshiva Univ.*, 703 F. Supp. 3d at 490 (quoting *Davis*, 526 U.S. at 644-45, 119 S. Ct. at 1661). To successfully plead a deliberate indifference claim, the plaintiff must allege (1) "facts sufficient to cast some articulable doubt on the accuracy of the outcome of the disciplinary proceeding" and (2) "circumstances suggesting that gender bias was a motivating factor behind the erroneous finding." *Yusuf v. Vassar Coll.*, 35 F.3d 709, 715 (2d Cir. 1994).

Under either theory of liability, to state a viable Title IX claim, the conduct complained of must be gender-oriented. *Nungesser v. Columbia Univ.*, 244 F. Supp. 3d 345, 362 (S.D.N.Y. 2017) ("The student-on-student or teacher-on-student harassment forming the basis for a Title IX claim must also, of course, be 'gender-oriented.'") (quoting *Davis ex rel. LaShonda D.*, 526 U.S. at 631, 119 S. Ct. at 1665); *see D.S. ex rel. C.S. v. Rochester City Sch. Dist.*, No. 19-CV-6528(EAW), 2020 WL 7028523, at *11 (W.D.N.Y. Nov. 30, 2020) (dismissing Title IX claim where the plaintiff did not identify "any harassment that arose because of [the plaintiff's] gender").

Plaintiff's Title IX claims for hostile environment and deliberate indifference both fail for the same reason: Doe does not plausibly allege that either claim is based on his gender. As a threshold matter, he does not allege that Hofstra – the only remaining Defendant in this case – took any adverse action whatsoever against him based on his gender or, in fact, for any other reason. To the contrary, Plaintiff specifically alleges that he withdrew from the University before the investigation against either himself or Roe was complete. Compl. ¶ 153. Although he claims that he withdrew from two classes, *id.* at ¶ 80, he does not allege that Hofstra required him to do so such that Hofstra placed his ability to graduate in question. He alleges that he withdrew from Hofstra voluntarily. *Id.* at ¶ 153. Nor does Plaintiff assert that that Hofstra took any other action that would have compelled him to withdraw from the University. Insofar as Plaintiff claims that Hofstra did not adequately investigate his amendments to his Title IX complaint, *id.* at ¶¶ 154-72, he again does not allege that this was related to his gender. His allegations demonstrate that Hofstra took his complaint seriously by conducting an investigation and that he subsequently voluntarily withdrew from the University. *Id.* There is no plausible allegation that Plaintiff was "excluded from participation in" or "subjected to discrimination" by Hofstra based on his sex. *See Hayut v. State Univ. of New York*, 352 F.3d 733, 754 (2d Cir. 2003) (holding that the university's response and investigation was adequate where it "acted expeditiously and reasonably, and exhibited no indifference at all to [the plaintiff's] allegations"); *Nungesser v. Columbia Univ.*, 169 F. Supp. 3d 353, 367 (S.D.N.Y. 2016) (dismissing Title IX claims where the

plaintiff alleged "neither that he was harassed because of his male gender nor that he was subjected to sexually harassing conduct that [gave] rise to a claim for harassment under Title IX"). His allegations concerning Hofstra's actions, therefore, fail to establish liability under Title IX.

Moreover, although student-on-student action may form the basis of a Title IX claim, *see Yeshiva Univ.*, 703 F. Supp. 3d at 491, the outcome is the same, as the conduct at issue must still be gender-oriented to support a cause of action. *Nungesser*, 244 F. Supp. 3d at 362. Plaintiff's allegations that his classmates treated him less favorably are not actionable under Title IX. Doe alleges that he "was sexually harassed by being wrongfully labeled as a rapist and as a result was ostracized from his fellow students." *Id.* at ¶ 222. He does not, however, offer a single non-conclusory allegation that his classmates mistreated or harassed him based on his gender. To the contrary, Plaintiff specifically alleges that the hostility he claims to have experienced was because his classmates believed that he raped Roe. *Id.* at ¶¶ 64-68, 77. To the extent Plaintiff alleges that his classmates were disinclined to perform scenes with him or did not cheer as loudly for him as other classmates following shows, *id.* at ¶¶ 64-67, 80, 84, he does not plausibly allege that this conduct was based on his gender, and "[p]ersonal animus is not gender-based harassment, and cannot form the basis for a Title IX violation." *Nungesser*, 169 F. Supp. 3d at 367 (citing *Sanches v. Carrollton-Farmers Branch Indep. Sch. Dist.*, 647 F.3d 156, 165 (5th Cir. 2011)). To this end, courts in the Second Circuit "reject[] the assumption that 'rapist' is a gender-specific term." *Id.* at 366-67; *see Roe v. St. John's Univ.*, No. 19-CV-

4694(PKC)(RER), 2021 WL 1224895, at *20-21 (E.D.N.Y. Mar. 31, 2021) (dismissing a male plaintiff's Title IX claims premised on online statements claiming that he was a rapist).

At the end of the day, Plaintiff was accused of raping his classmate. When other classmates learned of this, they became less inclined to work or collaborate with him. Doe concedes that his classmates' conduct was due to the allegations that he raped Roe. *Id*. at ¶¶ 64, 69, 77, 80. He does not allege that any change in treatment was gender-oriented. Nor does Plaintiff allege that he was denied any privileges with respect to his enrollment in the B.F.A. Program or as a student at Hofstra. In fact, he continued to participate in classes, rehearsals, and performances. *Id*. at ¶¶ 38, 61, 65-67. Instead, Doe concedes that he voluntarily withdrew from the University while the investigation of his complaint was pending. *Id*. at ¶ 153. These allegations are insufficient to establish a claim arising under Title IX. *See Hayut*, 352 F.3d at 754; *Nungesser*, 169 F. Supp. 3d at 367. Accordingly, Plaintiff's Title IX claims are dismissed.[5]

### B. State Law Claims

#### 1. NYSHRL Claim

The NYSHRL provides in relevant part that it is:

an unlawful discriminatory practice for an educational institution to deny the use of its facilities to any person otherwise qualified, or to permit the harassment of any student or applicant, by reason of his race, color, religion, disability, national origin, citizenship or immigration status, sexual orientation, gender identity or expression, military

---

[5] Plaintiff's allegations regarding Hofstra's alleged "history of failing to discipline a female perpetrator," *see id*. at ¶ 213, and campaigns and articles aimed at raising awareness of sexual assault," *see id*. at ¶¶ 199-211, are distinct and irrelevant to Doe's allegations in this action.

13

status, sex, age, marital status, or status as a victim of domestic violence, except that any such institution which establishes or maintains a policy of educating persons of one sex exclusively may admit students of only one sex.

N.Y. Exec. Law § 296(4). "The standards for analyzing Title IX claims and Exec. Law § 296 are 'identical.'" *Doe*, 703 F. Supp. 3d at 506 (quoting *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 n.1 (2d Cir. 2000)); *see Novio v. N.Y. Acad. of Art*, 286 F. Supp. 3d 566, 581 (S.D.N.Y. 2017) (dismissing state law claim arising under NYSHRL § 296(4) because the "identical standard" applies as to Title IX claims, which were deficient). Having determined that Plaintiff's Title IX claims are deficient for the reasons described above, his NYSHRL § 296(4) claim similarly fails as a matter of law. *Doe*, 703 F. Supp. 3d at 506; *Novio*, 286 F. Supp. 3d at 581. Accordingly, Defendant's motion is granted with respect to Plaintiff's NYSHRL claim.

### 2. Contractual Claims

Finally, Plaintiff asserts a cause of action for breach of contract based upon Hofstra's refusal to allow an advisor to appear with him at the hearing scheduled for May 3, 2023. Compl. ¶¶ 254-69. He further alleges that Hofstra dismissed his Title IX complaint in violation of the Title IX Grievance Policy. *Id.* at ¶¶ 159, 182, 243, 259. According to Doe, "[t]he Handbook constitutes and represents a contract between students and the University . . . ." *Id.* at ¶ 176. Defendant argues that, "[p]ursuant to the Title IX Policy, because Plaintiff was no longer attending Hofstra, Hofstra exercised its discretion to dismiss is complaint against Roe." *See* Defendant's Memorandum of Law in Opposition to Motion ("Def.'s Mem."), DE [26-2], at 16.

14

"[T]o state a valid claim for a breach of contract, a plaintiff must state when and how the defendant breached the specific contractual promise." *Radin v. Albert Einstein Coll. of Med. of Yeshiva Univ.*, No. 04 Civ. 704(RPP), 2005 WL 1214281, at *10 (S.D.N.Y. May 20, 2005); *Chira v. Columbia Univ.*, 289 F. Supp. 2d 477, 485 (S.D.N.Y. 2003) ("[B]ald assertions and conclusory allegations that the University's rules or procedures were not followed, do not state a valid claim."). A student handbook may, in certain circumstances, create an enforceable contract between a student and a college or university. *Rolph v. Hobart & William Smith Colls.*, 271 F. Supp. 3d 386, 405 (W.D.N.Y. 2017) ("In certain situations, a student may sue his college for breach of an implied contract."); *see Papaspiridakos v. Educ. Affiliates, Inc.*, No. 10- CV-5628(RJD)(JO), 2013 WL 4899136, at *4 (E.D.N.Y. Sept. 11, 2013) (holding that a student may "bring a claim for failure to provide 'certain specified services' for which [he] has contracted, such as 'a designated number of hours of instruction, or a specific name on her diploma as set forth in the student catalogue'") (internal quotation omitted)). Nevertheless, unfulfilled "aspirational promises" are not actionable. *Nungesser*, 169 F. Supp. 3d at 370 (holding that "'[g]eneral policy statements' and 'broad and unspecified procedures and guidelines' will not suffice" to establish a breach of contract claim) (quoting *Ward v. New York Univ.*, No. 99 Civ. 8733(RCC), 2000 WL 1448641, at *4 (S.D.N.Y. Sep. 28, 2000)); *Gally v. Columbia Univ.*, 22 F. Supp. 2d 199, 206 (S.D.N.Y. 1998) ("[T]he mere allegation of mistreatment without the identification of a specific breached promise or obligation does not state a claim on which relief can be granted.").

Applying these standards, Plaintiff's breach of contract claim is dismissed. Doe's allegations establish that discretionary dismissal is appropriate where "[s]pecific circumstances prevent the University from gathering evidence sufficient to reach a determination regarding the Formal Complaint or allegations within the Formal Complaint." Compl. ¶ 168. Hofstra exercised that discretion here. Moreover, while Plaintiff alleges that the Title IX Grievance Policy allows for an advisor at "all meetings," *id.* at ¶ 180, he does not allege that the Student Handbook guarantees legal representation and, in any event, he does not allege that he was denied the right to have an advisor present at any meeting or hearing. *Xiaolu Peter Yu v. Vassar Coll.*, 97 F. Supp. 3d 448, 474 (S.D.N.Y. 2015) (rejecting breach of contract claim where the defendant "did not make available the two witnesses [the plaintiff] had requested"); *see Doe v. Hobart & William Smith Colls.*, 750 F. Supp. 3d 79, 113 (W.D.N.Y. 2024) (holding that it was not a breach of contract for the university to deny an advisor from providing answers to the plaintiff at a hearing). Moreover, Plaintiff alleges that Hofstra assigned a Title IX coordinator with whom Plaintiff corresponded. *See* Compl. ¶¶ 73, 87, 143, 147. Likewise, the preclusion of an attorney at the hearings did not deny Plaintiff the benefit of enrollment at the University, as he does not allege that the hearing with the University was a judicial proceeding and he was not denied the opportunity to have an acceptable advisor present. *See Yu*, 97 F. Supp. 3d at 474; *Nungesser*, 169 F. Supp. 3d at 370-71. Accordingly, his allegations fail to state a

16

breach of contract claim and Defendant's motion is granted with respect to that cause of action.[6]

## IV. CONCLUSION

For the reasons set forth herein, Defendant's motion for judgment on the pleadings is granted in its entirety. As Plaintiff does not seek leave to replead, and because his existing allegations do not support a finding that an amended complaint may have merit, the Complaint is dismissed with prejudice. The Clerk of the Court is respectfully directed to enter judgment in favor of Defendant and against Plaintiff and to close this case.

Dated: Central Islip, New York
September 8, 2025      **SO ORDERED**

/s/ Steven I. Locke
STEVEN I. LOCKE
United States Magistrate Judge

---

[6] Insofar as Plaintiff asserts a claim for breach of the implied covenant of good faith and fair dealing, *see* Compl. ¶¶ 254-69, it is dismissed as duplicative of his breach of contract claim, as Plaintiff alleges no facts distinct from those in his breach of contract claim. *See Beck v. Metro. Bank Holding Corp.*, 747 F. Supp. 3d 442, 463 (E.D.N.Y. 2024) ("A claim for breach of the implied covenant of good faith and fair dealing is properly dismissed as duplicative where the claim arises from the same operative facts and seeks the same damages as the breach of contract claim.") (internal quotation omitted); *Clogher v. N.Y. Med. Coll.*, 112 A.D.3d 574, 575, 976 N.Y.S.2d 198, 199 (2d Dep't 2013) (holding that a claim for breach of the implied duty of good faith and fair dealing, was "not a viable cause of action . . . because it [was] duplicative of the second cause of action" for breach of contract). Moreover, "a student cannot maintain a breach of contract claim against a university based solely on the implied covenant of good faith." *Evans v. Columbia Univ.*, No. 14-CV-2658(NSR), 2015 WL 1730097, at *4 (S.D.N.Y. Apr. 13, 2015)